IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MYRTA B. MORALES-CRUZ

Plaintiff

vs                                                          CIVIL 09-1898CCC

UNIVERSITY OF PUERTO RICO;
ROBERTO APONTE-TORO and his legal
conjugal partnership; CARLOS DIAZ-OLIVO
and his legal conjugal partnership; GLADYS
ESCALONA and her legal conjugal
partnership; IVONNE MORENO and her legal
conjugal partnership; SONIA BALET and her
legal conjugal partnership; ANA
GUADALUPE and her legal conjugal
partnership; JOSE JUAN ESTRADA and his
legal conjugal partnership; ANGELES
MOLINA and her legal conjugal partnership;
BRAD WEINER and his legal conjugal
partnership; PAUL LATORTUE and his legal
conjugal partnership; JANE DOE and JOHN
DOE

Defendants

## OPINION AND ORDER

Plaintiff Myrta Morales-Cruz (Morales), a former law professor at the University of

Puerto Rico School of Law, has brought this action under Title VII of the 1964 Civil Rights

Act and 42 U.S.C. § 1983 claiming that she was a victim of gender-based discrimination and

deprived of various constitutional rights by the named defendants, which include the

University of Puerto Rico (UPR) and several of its administrative and academic officials.

Before the Court now is the Motion to Dismiss filed by all defendants on April 13, 2010

CIVIL 09-1898CCC                                    2

(docket entry 53), plaintiff's opposition filed on May 17, 2010 (docket entry 59), and defendants' Reply to the Opposition filed on June 1, 2010 (docket entry 62).[1]

The facts, as taken from the complaint, follow: Morales was hired as an Adjunct Professor by the UPR School of Law (School) in 2002.  In 2003, she was offered the position of Assistant Professor, which placed her on track for tenure but subject to a 5-year probationary period.  In 2008, when her probationary period was about to expire, Morales requested a one-year extension to it before being considered for tenure.  Said request had to be reviewed by the School's personnel committee, composed by three of its professors, one of whom was defendant Carlos Díaz-Olivo (Díaz).

It appears that shortly before Morales' requested extension was considered by the School's personnel committee, she was called into the office of the School's Dean, defendant Roberto Aponte-Toro (Aponte), who interrogated her about an incident involving a male professor with whom she jointly taught a Legal Aid Clinic course and who was romantically involved with a student that became pregnant as a result.  Aponte chastised Morales for not informing him of the relationship, and insisted that it was her duty to do so. On May 7, 2008, the personnel committee recommended favorably to Aponte that Morales probationary period be extended for one year.  Díaz dissented from said recommendation, however, and bemoaned Morales' personality flaws, lack of judgment and inability to handle complex and sensitive situations based on the male professor/pregnant-student incident.

---

[1]Since its filing on September 4, 2009, this action has traversed the dockets of four different judges.  It was reassigned to the undersigned on November 30, 2010 (docket entry 64), upon the recusal of Judge García-Gregory.

CIVIL 09-1898CCC                                3

On May 12, 2008, Aponte recommended to the Administrative Committee of the UPR Río Piedras campus (Committee) that Morales' probationary period be extended for one year. Nonetheless, Aponte noted in his report the situation involving the male professor and the student and concurred with Díaz' opinion on the matter, stating that to grant tenure to Morales would result in "sentencing the Law School and the University to thirty years with an intelligent, albeit immature . . . and fragile . . . resource." Amended Complaint (docket entry 49), at ¶ 13. He also labeled Morales as insecure and lacking in judgment. In response to those comments, on June 9, 2008 Morales wrote to the then Chancellor of the UPR Rio Piedras campus and President of its Administrative Committee as well, defendant Gladys Escalona (Escalona), to denounce what she considered were discriminatory and inflammatory comments made and actions taken by Aponte and Díaz during their handling of her request for extension of the probationary period. Aponte reacted to Morales' letter on June 25, 2008, by reversing his decision to recommend the extension of her probationary period. Aponte did not notify Morales of his new decision. Escalona then appointed an ad-hoc committee to review Morales' case, allegedly in contravention of UPR's regulations. Morales claims that in the weeks that followed, Aponte, Díaz and "others" which she does not identify continued to malign her, in writing and orally, within and outside the academic community, attacking her character, professional capacity and integrity and allegedly relating her to the professor-student situation and referring to her in official meetings as "that girl". On July 2, 2008, the Committee, composed by defendants Escalona, Ivonne Moreno (Moreno), Sonia Balet (Balet), Ana Guadalupe (Guadalupe), José Juan Estrada (Estrada), Angeles Molina (Molina), Brad Weiner (Weiner) and Paul Latortue (Latortue) decided by

CIVIL 09-1898CCC                              4

majority vote against the one-year extension requested by Morales to her probationary period.

Against this factual backdrop, Morales has raised six causes of actions: (1) a Title VII sex discrimination claim against the UPR based on defendants having stated on multiple occasions that the decision to deny the extension of her probationary period resulted from her failure to alert Aponte of the relationship between the male professor and the student as well as on defendants having also stated that her handling of the situation characterized her as immature, fragile, unable to handle complex issues and lacking judgment, all of which she attributes to defendants having stereotyped her expected behavior and attitudes toward the professor-student incident on how a female would act; (2) a Title VII retaliation claim against the UPR based on Aponte's reversal of his original recommendation to the Committee that Morales' probationary term be extended after she complained to Escalona that Aponte and Díaz had handled her request for extension in a "discriminatory nature," (3) a § 1983 claim against defendants Aponte, Díaz, Escalona, Moreno, Balet, Guadalupe, Latortue, Estrada, Molina and Weiner and their conjugal partnerships averring that her rights under the Fifth and Fourteenth Amendment were violated when she was discharged without due process of law and not provided an opportunity to clear her name of the "false and malicious" charges leveled against her, (4) a defamation claim against defendants Aponte and Díaz under the Constitution and laws of Puerto Rico, and (5) a tort claim against all defendants under the laws of Puerto Rico.

Defendants have moved to dismiss all claims (docket entry 53). The UPR, in support of its request that the Title VII claims be dismissed, invokes the deference traditionally

CIVIL 09-1898CCC                           5

afforded to higher education institutions on tenure decisions.  It also avers that plaintiff has

failed to plead enough facts to state prima facie claims for discrimination and retaliation

under Title VII and that, as to the discrimination claim in particular, she failed to exhaust

administrative remedies.  The individual defendants, in turn, similarly allege that the § 1983

claims brought against them under the Due Process Clause fail as plaintiff neither had a

property interest in her position nor was a liberty interest implicated in her termination.  They

also raise qualified immunity.  As to the claims under Puerto Rico law, while also claiming

that they lack merit, defendants seek dismissal, without prejudice, if all federal claims are

ultimately dismissed.

         Plaintiff has opposed the dismissal requested (docket entry 59).  Predictably, she

contends having pled enough facts to state claims for discrimination and retaliation under

Title VII. She also posits that pursuant to UPR regulations she had a property interest in her

position, insists that her liberty rights were infringed by the "false" and "defamatory"

comments made by defendants  described in the complaint, affirms that defendants are not

entitled to be afforded qualified immunity on the constitutional causes of action, and argues

that all claims under Puerto Rico law have been properly pleaded.

         We now address each of the grounds for dismissal in the order in which they were

raised.   Before doing so, however, we briefly reiterate the  standard  applicable when

reviewing motions to dismiss.  To survive such a motion, a complaint must comport with the

minimal requirements set forth in Federal Rule of Civil Procedure 8(a)(2) as interpreted by

the Supreme Court in Ashcroft v. Iqbal, ___ U.S. ___-, 129 S.Ct. 1937 (2009).  Although

Rule 8(a)(2) requires only "a short plain statement of the claim showing that the pleader is

CIVIL 09-1898CCC                          6

entitled to relief," Iqbal requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. This involves a two-step process. First, conclusory statements must be disregarded, and, second, the remaining factual assertions must, when read together, make a plausible (and not merely possible) case for relief. Id. at 1949-50.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice.  Id.   The complaint must be dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct . . . ."  Id. at 1950.


**CLAIMS UNDER TITLE VII**

        Under Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer to discharge or otherwise to discriminate against a person with respect to "compensation, terms, conditions, or privileges of employment," because of the person's sex.  42 U.S.C. § 2000e–2(a)(1).  Defendants aver, and plaintiff accepts, that her claim under Title VII is based on gender stereotyping, a modality first recognized by the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775 (1989).  In Price Waterhouse, the Court found that a woman who was denied a promotion because she failed to conform to gender stereotypes had a claim cognizable under Title VII as she was discriminated against "because of sex."  The plurality opinion there noted that "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for '[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the

entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'
" Id. at 251, 109 S.Ct. 1775 (quoting L.A. Dep't of Water & Power v. Manhart, 435 U.S. 702,
707 n. 13, 98 S.Ct. 1370, 55 L.Ed. 2d 657 (1978)) (some internal quotations omitted).  Thus,
the Supreme Court held that Title VII prohibits discrimination against women for failing to
conform to a traditionally feminine demeanor and appearance.  See also Chadwick v.
WellPoint, Inc., 561 F.3d 38, 44 (1st Cir. 2009).  Accordingly, in order to plead her
discrimination claim under Title VII, plaintiff needs to allege enough facts that would show
that she suffered an adverse employment action when she failed to conform to gender
stereotypes.[2]

In support of her gender stereotyping claim, plaintiff has alleged in her amended
complaint that following her request for a one-year extension to her about-to-expire 5-year
probationary term, defendant Aponte called her to his office to interrogate her on the
romance between the professor and the pregnant student.  She further alleges that shortly
thereafter the personnel committee of the law school favorably recommended the one-year
extension she had requested with a dissent by defendant Díaz, harshly criticizing plaintiff
mainly based on her handling of the professor-student situation; that defendant Aponte,

--------------------

[2]Defendants suggest that at the pleading stage the complaint needs to satisfy the
four-factor test under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct.
1817 (1973).  This is incorrect.  McDonnell Douglas outlined a burden of proof applicable
to making out a prima facie case of discrimination when a plaintiff elects to make out animus
by inference.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11, 122 S.Ct.
992 (2002) (overturning the Second Circuit's application of the McDonnell Douglas factors
at the pleading stage). At the pleading stage a complaint of sex discrimination need only
provide sufficient factual allegations to support the elements of the claim. See also
Weston-Smith v. Cooley Dickinson Hosp., Inc., 282 F.3d 60, 64 (1st Cir. 2002).

CIVIL 09-1898CCC                              8

authorized siding with Díaz' criticism, favorably recommended the extension of her

probationary period to the UPR's Administrative Committee, and, after plaintiff complained

to Escalona to complain about the comments, reversed it, prompting Escalona to appoint

an ad-hoc committee to review plaintiff's case followed by weeks of Aponte's and Díaz'

continued attacks on her character and professional capacity and references at official

meetings as "that girl;" which culminated in the Committee voting against extending her

probationary period. See Amended Complaint, pp. 4-8 , ¶¶ 7-18.  Plaintiff claims that the

actions of Aponte and Díaz were solely based on their "discriminatory animus." Complaint,

at p. 8, ¶ 19.  The following allegations supplement those outlined above:

> 26.  Defendants acted out of a discriminatory animus towards Ms.
> Morales-Cruz by expecting certain behavior and attitudes from her because
> she is a female, and by penalizing her for failing to act in the way they believe
> a female in her position should act. In doing so, they discriminated against her
> because of her sex, retaliated against her and ultimately caused her
> discharge, because of her sex.
>
> 27. Defendants explicitly stated in multiple occasions, orally and in writing, that
> their decision to deny the extension of her probationary period stemmed from
> her failure to alert the Dean as to the sexual relationship between her
> co-professor and a student. In doing so, they expected of Ms. Morales a
> behavior which they would not expect of a male professor.

28. Defendants further explicitly stated that Ms. Morales's handling of the situation showed
she was "immature", "fragile", "unable to handle complex and sensitive issues", showed a
"lack of judgment" and accused her of "twisting the truth." All of these characterizations stem
from Defendants' stereotypical view of how she should act as a female, and constitute
discrimination against her because of her sex.

Amended Complaint, pp. 9-10, ¶¶ 26-28 (emphasis in original).

The above-quoted paragraphs are plagued with conclusory statements and

threadbare recitals of the elements of a gender-stereotyping claim.  Under Iqbal we must

disregard them. See Iqbal, 129 S.Ct. at 1949.  Once those allegations and other similar

CIVIL 09-1898CCC                                    9

ones, as ¶ 19, are discarded, we are left only with a narrative of an adverse employment

decision based on actions which, although portrayed as unfair, cannot be attributed to

gender stereotyping.  Simply put, the fact that plaintiff was called into Aponte's office to

inquire on the professor-student incident is, as described, gender neutral, and does not bear

any relationship to sexual discrimination.  Likewise, the reasons given and the adjectives

used by defendant Díaz in his dissent from the personnel committee's recommendation,

later adopted by Aponte, are not linked to either her sex or sexual stereotyping.  The same

applies to subsequent actions taken by Aponte, Díaz, Escalona and the other individual

defendants in their capacity as members of the Committee.  The actual factual allegations

of the Amended Complaint are insufficient to establish that the facially gender-neutral

conduct plaintiff describes therein was based on perceptions about womanhood or gender

stereotypes of traditionally appropriate female behavior.  Rather, the allegations point to

actions taken to review her handling of a specific incident to which she became privy in her

capacity as a law professor, and which any other professor in a similar situation would have

undergone.

         While true that the amended complaint includes an allegation that Aponte and Díaz

referred to her as "that girl," this, by itself, does not configure a sex discrimination claim.

Assuming that the remark was sexually tinged, "simple teasing, offhand comments, and

isolated incidents (unless extremely serious) will not amount to discriminatory changes in

the terms and conditions of employment."  Faragher v. City of Boca Raton,

524 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed. 2d 662 (1998).  A working environment

must be "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently

severe or pervasive to alter the conditions of the victim's employment'" to be actionable under Title VII. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993). No such scenario may be inferred from defendants Aponte and Díaz' remark.

In sum, because we find that plaintiff failed to plead facts that would create an inference that any adverse action taken by defendants was based upon her gender, her sex discrimination claim under Title VII is hereby DISMISSED.

For similar reasons, and again assuming that all of plaintiff's factual allegations are true, we conclude that she has failed to show that she suffered a materially adverse employment action after she complained of discrimination. Under the relevant provision of Title VII, 42 U.S.C. § 2000e-3, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Plaintiff's retaliation claim is squarely anchored on Aponte's change of positions before the Committee once she complained to Escalona about his and Díaz' comments and actions, see Amended Complaint at p. 11, ¶¶ 32-34, which she conclusively labeled as "discriminatory." As noted above, the factual allegations of the Amended Complaint do not suffice to establish that the comments and actions of Aponte and Díaz were actually discriminatory on the basis of sex, and merely labeling them as such is not enough to transform them into a factually sufficient allegation under Iqbal. Accordingly, and for the reasons stated, plaintiff's retaliation claim under Title VII is also DISMISSED.

CIVIL 09-1898CCC                              11

**CLAIMS UNDER THE DUE PROCESS CLAUSE**

      Plaintiff asserts that her probationary appointment conferred her with both a property and a liberty interest, of which she was deprived without a due process of law.  Amended Complaint, p. 12, ¶ 38.  She explained the basis for her Due Process claim as follows:

      39. <u>Defendant Escalona, acting under color of law as Chancellor of the University, acted in violation of the applicable university procedures, by appointing and ad-hoc committee to review Plaintiff's case, a procedure that is not contemplated by the UPR's regulations, and by ignoring the clear letter of the regulations that establish the applicable procedures for terminating a tenure-track employee.</u>

      40. <u>Defendants Moreno, Balet, Guadalupe, Latortue, Estrada, Molina and Weiner, acting under color of law as voting members of the UPR/ Rio Piedras Campus's Administrative Committee's denied the extension of Plaintiff's probationary period on the basis of a discriminatory and ultra vires process, and caused her discharge without giving her notice and an opportunity to be heard.</u>

      41. <u>Defendants further deprived Ms. Morales-Cruz of her rights under the Fifth and Fourteenth Amendment by failing to provide her with an opportunity to clear her name of the false and malicious charges leveled against her, which baseless charges affected and continue to affect her good name, standing and reputation within the legal and academic communities.</u>

      42. Defendants knew, or should have known, that such an action attempted against Morales-Cruz's property and liberty interest, and required an opportunity to be heard and a due process of law.

Amended Complaint, at pp. 12-13, ¶¶ 39-42 (emphasis in original).

      It is apodictic that under the Due Process Clause, in order to show a deprivation of procedural due process, a party must first show that the challenged action implicates a constitutionally protected liberty or property interest.  <u>URI Student Senate v. Town of Narragansett</u>, 631 F.3d 1,  (1st Cir. 2011).  In the employment context, the Supreme Court defines a property interest "as a legitimate expectation in continued employment."  <u>Board</u>

CIVIL 09-1898CCC                    12

of Regents v. Roth, 408 U.S. 64, 577, 92 S.Ct. 2701 (1972).  In order to be "legitimate," the

entitlement must be grounded in some statute, rule or policy.  Id., at 576.  Plaintiff appears

to base her entitlement to continued employment on the UPR regulations.  As can be seen

from the allegations quoted above, she refers to them generically in the complaint and fails

to state how these actually conferred a legitimate entitlement.  The entitlement allegations

are plainly speculative and insufficient to state a claim under Iqbal.  See e.g. Pérez-Acevedo

v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008) (to assume an entitlement grounded in

state law from a complaint that makes scant reference to an insufficiently identified statute

would go against Bell Atlantic's [Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955,

1965 (2007)] admonition that a complaint's allegations must be more than "speculative").

What plaintiff does sufficiently allege, i.e. that she was terminated from her position once her

probationary appointment of five years expired without being extended for another year, as

requested, utterly leaves her without a property interest in continued employment.  Under

Puerto Rico law, employees generally do not have a property interest in continued

employment beyond the terms of their appointment.  Caro v. Aponte-Roque, 878 F.2d 1, 4

(1st Cir. 1989); see also Departamento de Recursos Naturales v. Correa, 118 D.P.R. 689,

697 (1987).  Thus, defendant has failed to show that she had a property interest in her

position requiring that she be afforded procedural due process before termination.

On whether plaintiff has sufficiently alleged a protected liberty interest, we

acknowledge that the Due Process Clause protects an individual from a government

employer who disseminates false and defamatory information about the individual in

connection with his termination.  Pendleton v. City of Haverill, 156 F.3d 57, 63

CIVIL 09-1898CCC                              13

(1st Cir. 1998).  While the liberty interest at stake is the employee's reputation, injury to

one's reputation by itself is insufficient to invoke due process protections.  See Paul v. Davis,

424 U.S. 693, 701, 96 S.Ct. 1155 (1976).  The employee's liberty interest is only implicated

when the employer imposes such a stigma as to restrict the employee's ability to obtain

future employment, in which case due process requires the government to provide the

employee a name-clearing hearing.    See Baden v. Koch, 799 F.2d 825, 830-31

(2d Cir. 1986).  This is commonly referred to as the "stigma plus" standard.  See URI

Student Senate, 631 F.3d at 9-10.

        While plaintiff has obviously attempted to cast her Due Process claim under this

standard, her complaint still fails to state a cause of action for several reasons.  The

defamatory statements that she insists were made against her are attributed to defendants

Aponte and Díaz, who according to the allegations of the complaint were not members of

the U.P.R.'s Administrative Committee that rejected her request for extension of the

probationary period which resulted in her termination.  Conversely, there is no allegation

indicating that at the time of the Committee's rejection of her extension request which

resulted in her termination there were defamatory expressions made by the Committee itself,

or by any of its members against plaintiff.  See e.g. Hawkins v. Rhode Island Lottery Com'n,

238 F.3d 112, 115 (1st Cir. 2001) (defamation has to occur in the course of the termination

of employment).  Nor are there factual allegations that defamatory statements by the

Committee, or its members, were made public.  Again, merely stating conclusorily that she

had a liberty interest and that she should, therefore, have been afforded an "opportunity to

clear her name of the false and malicious charges leveled against her, which baseless

charges affected and continue to affect her good name, standing and reputation within the legal and academic communities" (¶ 41 of the Amended Complaint), is not enough to state a claim under the Due Process Clause.  Given that defendant has failed to show that she had a liberty interest requiring that she be afforded procedural due process before her termination, her claims under the Due Process Clause are hereby DISMISSED.


**CLAIMS UNDER PUERTO RICO LAW**

As the Court has determined that all of plaintiff's federal claims must be dismissed for failure to state a claim, we decline to exercise supplemental jurisdiction over the related claims under Puerto Rico law.  Title 28 U.S.C. §1367(c)(3); see also Rossi v. Gemma, 489 F.3d 26, 39 (1st Cir. 2007) ("At the time the district court made its ruling, it had dismissed all federal claims on the pleadings, and so dismissal of the state claims was perfectly reasonable. 'As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.'") (Quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)) (alteration in original).  These will also be DISMISSED, albeit without prejudice.


**CONCLUSION**

We need go no further.  For the reasons stated, defendants' Motion to Dismiss (**docket entry 53**) is GRANTED.  Accordingly, judgment shall be entered DISMISSING

CIVIL 09-1898CCC                                       15

plaintiff's claims under Title VII and 42 U.S.C. §1983, with prejudice.  The claims under

Puerto Rico law are similarly DISMISSED, but without prejudice.

      SO ORDERED.

      At San Juan, Puerto Rico, on March 31, 2011.

                                  S/CARMEN CONSUELO CEREZO
                                  United States District Judge